Rebecca Cambreleng, OSB No. 133209
rebecca@workplacelawpdx.com
Ashley A. Marton, OSB No. 171584
ashley@workplacelawpdx.com
**CAMBRELENG & MARTON LLC**
3518 S Corbett Ave
Portland, Oregon 97239
Telephone: 503-477-4899
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

(Portland Division)

| | |
|---|---|
| **ASHLEY ROBERTSON**, an individual,<br><br>Plaintiff,<br><br>v.<br><br>**TRI-COUNTY METROPOLITAN TRANSPORTATION DISTRICT OF OREGON dba TRIMET**, a municipal corporation,<br><br>Defendant. | Case No. 2:24-cv-00343<br><br>**COMPLAINT**<br>(Sex Discrimination; Retaliation; Disability Discrimination)<br><br>**JURY TRIAL REQUESTED** |

### NATURE OF THE ACTION

1. This is an action under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* alleging sex discrimination and retaliation for opposition to gender discrimination, FMLA retaliation and interference pursuant to 29 U.S.C. § 2601 et seq., and violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(b)(4).

2. Plaintiff also brings state law claims for violation of the Oregon Equality Act

Page 1 – **COMPLAINT**                    **CAMBRELENG & MARTON LLC**
                                           3518 S Corbett
                                           Portland, Oregon 97239
                                           Telephone: 503-477-4899

prohibiting sex discrimination in employment, ORS 659A.030(1)(a); hostile work environment based on sex pursuant to ORS 659A.030(1)(a), retaliation under ORS 659A.030(1)(f), whistleblower retaliation pursuant to ORS 659A.199 and 659A.203, protected medical leave interference and retaliation, ORS 659A.150 *et seq.*, and disability discrimination pursuant to ORS 659A.112, all pursuant to the court's supplemental jurisdiction.

## JURISDICTION AND VENUE

3. This court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331.

4. The court has jurisdiction over Plaintiffs' state law claims set forth in this complaint pursuant to its supplemental jurisdiction to hear related state law claims under 28 U.S.C. § 1367(a). Both the federal and state claims alleged herein arose from a common nucleus of operative fact, the state action is so related to the federal claim that they form part of the same case or controversy, and the actions would ordinarily be expected to be tried in one judicial proceeding.

5. The employment practices described herein are alleged to have been committed in the District of Oregon.

## PARTIES

6. Plaintiff **ASHLEY ROBERTSON** is a female resident and citizen of the state of Texas, who was at all material times employed by defendant. At all material times, she was an employee working in the State of Oregon for purposes of the claims set forth herein.

7. Defendant **TRI-COUNTY METROPOLITAN TRANSPORTATION DISTRICT OF OREGON** ("TriMet") is a municipal transit company with its primary business

office in Portland, Oregon. At all material times, TriMet employed 50 or more employees and was and is an employer and/or person for purposes of the claims set forth in this complaint.

## PROCEDURAL REQUIREMENTS

8. Plaintiff timely filed her administrative complaint with the Oregon Bureau of Labor and Industries (BOLI) and the Equal Employment Opportunity Commission (EEOC).

9. Plaintiff received a substantial evidence determination from BOLI and a right to sue notice from the EEOC and timely filed this complaint.

## STATEMENT OF FACTS

10. Plaintiff was hired by Tri-Met in 2008 as a bus operator.

11. Plaintiff was promoted and achieved outstanding reviews, eventually becoming a Rail Operator in 2013.

12. In 2016, she was promoted to Rail Supervisor.

13. Plaintiff was one of a handful of Latino Supervisors, and the only female Latino Rail Supervisor.

14. Plaintiff's supervisor since 2017 was Todd Hurley, Rail Fields Operations Manager. He is a white male.

15. In 2019, Plaintiff was assaulted by a passenger, resulting in an injury to her elbow that required surgery.

16. While she was out on workers' compensation, she was terminated by Tri-Met in March 2020.

17. With the help of her union and an attorney, Plaintiff was reinstated to her position as Rail Supervisor in approximately September 2020.

18. Since her 2019 assault, Plaintiff was a vocal advocate for safety measures to protect Tri-Met employees.

19. On February 28, 2022, Plaintiff and her partner Linwood Gallaway were on a routing daily presence ride when a woman having a mental health crisis approached Plaintiff and her partner telling them she heard a voice of a man drowning at a previous stop.

20. Plaintiff spoke with her briefly, at which point the woman, unhappy with Plaintiff's advice, began calling Plaintiff names, using foul language, and making threats.

21. Plaintiff and her partner asked the woman to step off the train when they arrived at the Lloyd Center MAX station.

22. After the train arrived at Lloyd center, the passenger refused to deboard. Plaintiff deboarded and walked to the end of the platform. Her partner, Mr. Galloway, was still dealing with the passenger. Plaintiff went back to try and get her partner to leave, but Mr. Galloway refused. Plaintiff re-entered the train and asked the passenger if she would show her where the voice was coming from. The passenger exited the train and Plaintiff followed under the impression that the passenger was cooperating. That's when the passenger turned towards Plaintiff and got aggressive.

23. The woman approached Plaintiff, behaving physically aggressive and yelling, including putting her hand in Plaintiff's face.

24. Plaintiff warned her to back away, but she refused. Plaintiff and her partner both told the woman again to step back. The passenger was given five (5) warnings to back up. She refused, and attempted to grab Plaintiff's hand, at which point Plaintiff pushed her back, stating "do not touch me."

25. The woman refused to back away and attempted to break Plaintiff's hand.

26. The woman then picked up a nearby skateboard belonging to a passenger and raised it in an attempt to hit Plaintiff with it.

27. At that point, the person who owned the skateboard yelled for her to give it back, she threw it on the ground, and walked away while continuing to yell.

28. Security showed up after the woman had left. Police never arrived, despite being called by the partner during the altercation.

29. Plaintiff was assessed by an ambulance and sustained injuries to her hand.

30. Plaintiff filed a workers' compensation claim that same day, February 28, 2022.

31. On March 9, 2022, Mr. Hurley emailed Plaintiff and invited her to a meeting labeled "Assault Check In."

32. Plaintiff emailed Mr. Hurley asking about the purpose of the meeting, but never received a response. In her email, she copied her union representatives, and expressed apprehension about possible discipline based on her previous experience with Mr. Hurley.

33. In fact, Mr. Hurley had directly issued the meeting invitation, bypassing formal disciplinary channels. He eventually responded to Plaintiff that the meeting was not disciplinary in nature.

34. Mr. Hurley then noted, however, that if Plaintiff chose not to attend the meeting, leadership might resort to a "secondary Labor Relations path of a mandatory meeting and investigation".

35. Mr. Hurley stated that under the circumstances, Plaintiff was "not the victim" and he was "throwing [her] a huge lifeline."

36.     Despite his assurances of a non-disciplinary purpose, ATU President Shirley Block, ATU Vice President Fred Casey, and Executive Administrative Assistant Ruth Ramos attended the meeting.

37.     The meeting occurred on March 14, 2022, and lasted approximately an hour. During the March 14 meeting, Mr. Hurley attempted to scrutinize Plaintiff's actions on a video recording with no sound and made statements and accusations about her behavior. Plaintiff was never given the opportunity to address the accusations or explain the interaction.

38.     Mr. Hurley raised his voice and accused Plaintiff of having mental health issues, claiming he believed she suffered from "PTSD, depression, and anxiety."

39.     Mr. Hurley was so abusive that the meeting had to be paused for Plaintiff to collect herself.

40.     At the end of the meeting, despite it not being disciplinary in nature, Mr. Hurley gave Plaintiff two options; (1) she must either undergo a mental health fit-for-duty assessment, or (2) face a mandatory investigation potentially leading to formal disciplinary actions, including potential demotion. Neither option guaranteed that Plaintiff would return to her Rail Supervisor position.

41.     Plaintiff, trying to clarify her options, emailed Mr. Hurley on April 9, asking for confirmation that if she agreed to undergo a mental health fit-for-duty assessment, there would be no investigation into the February 28 assault on Plaintiff and no discipline.

42.     Mr. Hurley clarified that since the meeting, a decision was made to treat the issues separately: the status of the February 28 incident/investigation was pending, and the scheduled fit-for-duty evaluation was optional.

43.     Mr. Hurley then noted that not attending the fit-for-duty mental health evaluation could "complicate" matters and, thus, he recommended attending.

44.     Plaintiff, who was still on protected workers' compensation leave from the date of the incident, February 28, raised questions about the timing of the evaluation, pointing out her inability to access mental health support through workers' compensation due to Tri-Met's ongoing investigation into the February 28th assault, which according to Tri-Met, paused aspects of her claim.

45.     Plaintiff also stated in the email that she felt singled out and discriminated against because of a perceived disability.

46.     Unbeknownst to Plaintiff, prior to the March 14 meeting, Mr. Hurley discussed Plaintiff with Mr. Casey and Ms. Block, and had agreed they thought Plaintiff was "suffering from mental health issues". During a subsequent investigation, Mr. Casey and Ms. Block admitted that they did not expect or anticipate Mr. Hurley to discuss Plaintiff's mental health during the meeting.

47.     On April 21, 2022, based on the March 14 meeting with Mr. Hurley, Plaintiff submitted a formal complaint with Tri-Met's HR department, accusing Mr. Hurley of unfair treatment, discrimination, and retaliation.

48.     On April 25, Mr. Hurley sent a letter to Plaintiff informing her that Tri-Met would be conducting a full investigation into the February 28 assault and a mandatory fact-finding meeting was being set.

49.     On May 17, Plaintiff was released back to full duty.

50.     In response, Mr. Hurley told Plaintiff she was on a full week vacation, and they

would be in touch May 23.

51. On June 15, Plaintiff received a letter recommending her demotion for the actions of the February 28 assault.

52. On June 30, Tri-Met issued a letter finding that Plaintiff had acted inappropriately during her February 28 assault and demoted her employment based on a violation of Tri-Met policies, effective July 3.

53. On July 1, Plaintiff felt she had no choice but to resign her position.

54. On July 5, Tri-Met's HR department substantiated Plaintiff's allegations against Mr. Hurley, including that "Mr. Hurley's conduct during the March 14, 2022, meeting violated the Respectful Workplace subsection of H.R. 6.2. As confirmed by two witnesses, Hurley raised his voice to [Plaintiff], told her he believed she suffered from PTSD, depression, and anxiety, and presented [Plaintiff] with a choice between a fit for duty exam and a possibly disciplinary investigation into her conduct."

55. Further, the report found that "[Mr. Hurley] nevertheless crossed the line from acceptable managerial tactics into a violation of TriMet policies. Hurley, as the manager, had a heightened duty of care in this situation. It was incumbent upon him to remain calm and composed regardless of how [Plaintiff] may or may not have reacted to the things he said. It was also incumbent upon him to be judicious about what he said, and to refrain from making diagnostic comments about her mental health. Instead, Hurley transformed a check-in meeting into a situation where [Plaintiff], not unreasonably, felt attacked and disregarded."

56. However, Tri-Met's HR department stated that Mr. Hurley's behavior towards Plaintiff was merely "inappropriate" as opposed to discriminatory, and only required additional

training as a consequence of his conduct towards Plaintiff.

57. Plaintiff's partner, along with at least 5 other Tri-Met employees have engaged in conduct similar to Plaintiff and have not been demoted. All of these employees are white men.

58. For example, in relation to the same February 28 incident that led to the assault on Plaintiff, on March 7, Mr. Hurley contacted Pat Williams, Respondent's Security and Management Director, via email to gain his perspective on the February 28 incident. Mr. Williams, after reviewing the video, expressed reasonable concern about both Plaintiff's and Mr. Gallaway's actions.

59. Despite Mr. Williams's analysis of the incident, including his critique of Mr. Gallaway's behavior, Tri-Met only held Plaintiff accountable. Conversely, Mr. Hurley characterized Mr. Gallaway's behavior as completely compliant with operating procedure, sparing him any disciplinary measures.

60. In another instance, on March 15, 2021, a male Tri-Met Rail employee shoved a customer without provocation, and in another incident, on May 7, 2022, hit a customer. Upon information and belief, this employee has never been demoted or disciplined for these instances.

61. In another incident, on March 22, 2021, a different white male Tri-Met Rail employee put a customer on the ground and held them there until backup could arrive. Upon information and belief, this employee has not been demoted or disciplined for this conduct.

62. Defendant engaged in the conduct described herein above with the purpose to cause Plaintiff to quit or with reckless disregard that such conduct would cause her to quit. As a result, Plaintiff was constructively discharged.

CAMBRELENG & MARTON LLC
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

**DAMAGES ALLEGATIONS**

63.  As a result of the actions alleged herein, plaintiff has and will continue to suffer economic damages. Plaintiff is entitled to recover from defendant such lost wages and benefits of employment and other economic losses in such amount as may be established at trial.

64.  As a further result of defendant's actions alleged herein, plaintiff has suffered and is entitled to recover for her noneconomic damages in an amount found to be appropriate by a jury based on the evidence presented at trial.

65.  Plaintiff is entitled to such equitable and other relief in her favor on such terms as the court may direct.

66.  Plaintiff is entitled to recover her reasonable attorney's fees, reasonable expert witness fees, and other costs of the action to be paid by the defendant pursuant to 42 U.S.C. § 2000e-5(k); ORS 659A.885; and/or ORS 20.107.

**FIRST CLAIM FOR RELIEF**

**(42 U.S.C. § 2000e-2(a) – Sex Discrimination)**

67.  Plaintiff incorporates paragraphs 1 through 66 as though fully set forth herein.

68.  Plaintiff identifies as a female.

69.  Defendant TriMet discriminated against Plaintiff in the terms and conditions of her employment as alleged herein in substantial motivating part due to her sex.

70.  Defendant TriMet held Plaintiff, a female, to a different standard than the males who engaged in the same or similar behavior as outlined herein.

71.  Plaintiff suffered an adverse employment action based, at least in part, on her sex as alleged herein.

72. Defendant TriMet's actions violated 42 U.S.C. §2000e-2(a) and Plaintiffs are entitled to appropriate relief.

## SECOND CLAIM FOR RELIEF

### (ORS 659A.030(1)(a) et seq. – Sex Discrimination)

73. Plaintiff incorporates paragraphs 1 through 66 as though fully set forth herein.

74. It is an unlawful employment practice for any employer to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions, or privileges of employment on the basis of an individual's race or national origin.

75. Defendant discriminated against Plaintiff in the terms and conditions of her employment as alleged herein in substantial motivating part due to plaintiff's sex.

76. Defendant's conduct as described herein is in violation of ORS 659A.030(1)(b).

## THIRD CLAIM FOR RELIEF

### (ORS 659A.030 – Hostile Work Environment)

77. Plaintiff incorporates paragraphs 1 through 66 as though fully set forth herein.

78. Defendant subjected Plaintiff to a hostile work environment based on her sex and race. Defendant subjected Plaintiff to increased scrutiny, verbal harassment, threats, and demeaning behavior by Mr. Hurley, condoned by Tri-Met through their lack of reporting and accountability. The harassment was pervasive, severe, offensive, and outrageous.

79. Defendant's actions had the purpose and effect of creating an intimidating, hostile, and offensive working environment based on Plaintiffs' sex and race and had the effect and purpose of unreasonably interfering with Plaintiff's work and wellbeing.

## FOURTH CLAIM FOR RELIEF

## (Retaliation ORS 659A.030(1)(f))

80. Plaintiff incorporates paragraphs 1 through 66 by reference as though set forth fully herein.

81. It is an unlawful employment practice for any person to discharge, expel or otherwise discriminate against any other person because that person has opposed any unlawful practice under ORS Chapter 659A or has attempted to do so.

82. Defendant discriminated against plaintiff in the terms and conditions of her employment as alleged herein in retaliation for plaintiff's opposition to and complaints and reports of discrimination due to race, gender, and perceived disability which constitute violations of law, regulation, and rule.

## FIFTH CLAIM FOR RELIEF

## (Retaliation 42 U.S.C. §2000e-3(a))

83. Plaintiff incorporates paragraphs 1 through 66 by reference as though set forth fully herein.

84. Plaintiff resisted and opposed discriminatory actions directed toward her by defendant as alleged herein.

85. Plaintiff's complaints are protected opposition to discrimination under federal and state law.

86. Because of plaintiff's protected opposition, Defendant engaged in conduct that would dissuade a reasonable worker from making or supporting a charge of discrimination in violation of 42 U.S.C. § 2000e-3(a).

CAMBRELENG & MARTON LLC
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

## SIXTH CLAIM FOR RELIEF

**(Disability Discrimination - Americans with Disabilities Act, 42 U.S.C. § 12112)**

87. Plaintiff incorporates paragraphs 1 through 66 as though fully set forth herein.

88. At all material times, plaintiff was a qualified individual with a disability in that she was perceived as suffering an impairment that substantially affected one or more major life activities.

89. Defendant regarded plaintiff as a disabled person in that they acted against her based on her impairment or on an impairment Defendant believed Plaintiff possessed.

90. Defendant and its agents discriminated against plaintiff in the terms and conditions of her employment and in demoting Plaintiff in substantial motivating part because it regarded her as a disabled person.

91. Defendant's conduct as described herein is in violation of 42 U.S.C. § 12112.

## SEVENTH CLAIM FOR RELIEF

**(Disability Discrimination – ORS 659A.112)**

92. Plaintiff incorporates paragraphs 1 through 66 as though fully set forth herein.

93. Plaintiff was regarded as or perceived as having a mental health impairment.

94. Plaintiff is protected by statute as an individual with a disability because defendant regarded her as disabled.

95. Defendant discriminated against Plaintiff in the terms and conditions of her employment based on her disability as alleged herein.

96. Defendant discriminated against Plaintiff by taking adverse employment action against her and/or failing to engage in the interactive process and/or failing to make a

reasonable accommodation in violation of this statute as alleged herein.

97.     Plaintiff's resignation was a direct outcome of the oppressive working conditions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court to:

1.      Declare defendant in violation of the statutes set forth in Plaintiff's claims for relief;

2.      Order Defendant to make Plaintiff whole by providing compensation for non-economic losses in an amount as awarded by the court or a jury;

4.      Award Plaintiff her costs of suit and reasonable attorney fees, costs, and expert witness fees;

5.      Order Defendant to pay prejudgment interest and post-judgment interest on all amounts due to Plaintiff as a result of this action, with interest at the prevailing rate; and

6.      Order such further or alternative relief in favor of Plaintiff as the court deems appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all questions of fact or combined questions of law and fact raised by this complaint.

DATED February 26, 2024.

**CAMBRELENG & MARTON LLC**

By:     */s Rebecca Cambreleng*
Rebecca Cambreleng, OSB No. 133209
*Of Attorneys for Plaintiff*